UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEALTH NEW ENGLAND, INC., | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | *   Civil Action No. 15-30206-MGM |
| TRINITY HEALH – NEW ENGLAND, INC., | * |
| and TRINITY HEALTH CORPORATION, | * |
| | * |
| Defendants. | * |

MEMORANDUM AND ORDER REGARDING
PLAINTIFFS' MOTION FOR PRELIMINARY
INJUNCTION
(Dkt. No. 38)

September 14, 2016

MASTROIANNI, U.S.D.J.

I.  INTRODUCTION

Health New England ("HNE") brings this trademark infringement action[1] against Trinity Health – New England, Inc. and Trinity Health Corporation (together, "Trinity"). Presently before the court is HNE's Motion for Preliminary Injunction, in which it asks the court to enjoin Trinity

> from using the HEALTH NEW ENGLAND mark, and/or any singular, spaced, un-spaced, hyphenated, and/or possessive variant of the HEALTH NEW ENGLAND mark, and/or any other confusingly similar marks, including the TRINITY HEALTH NEW ENGLAND and the TRINITY-HEALTH NEW ENGLAND marks, in commerce, to include marketing products, advertisement, promotional materials, internet website, domains, other products or materials.

(Dkt. No. 38.)

The court held a hearing on September 1, 2016. At the hearing, the court had an extensive colloquy with counsel regarding the propriety of holding an evidentiary hearing. Both parties

---

[1] HNE also asserts claims for unfair competition in violation of 15 U.S.C. § 1125(a), false designation of origin in violation of 15 U.S.C. § 1125(a), and unfair methods of competition in violation of Mass. Gen. Laws ch. 93A. All of these claims flow directly from HNE's assertion that Trinity has infringed its trademark.

requested the court decide HNE's motion in the absence of an evidentiary hearing. Even after the court warned each party that the lack of an evidentiary hearing could prove detrimental to its position, both parties reaffirmed their request that evidence not be taken. Largely for this reason—HNE's failure to develop its assertions during an evidentiary hearing or otherwise—the court concludes HNE has not carried its burden to show that it is entitled to a preliminary injunction.

## II. BACKGROUND

HNE is a nonprofit corporation licensed as a Health Maintenance Organization ("HMO") in Massachusetts. It operates in the health care markets of Massachusetts as well as (through a subsidiary) Connecticut and has been in business for over thirty years. HNE owns a federal registration for its HEALTH NEW ENGLAND MARK on the principal register under U.S. Trademark Registration No. 1,426,061 (the '061 mark) for "operating a health maintenance organization which arranges health and medical care for its members through a network of selected hospitals and physicians." (Dkt. No. 40, Ex. 9.) The '061 mark was registered on January 20, 1987, with a first use in commerce date listed as January 1, 1986. Trinity is a health care services company which operates multiple health care facilities in twenty-one states. In 2015, Trinity merged with St. Francis Care, Inc., a health care company located in Hartford, Connecticut, and began using the regional name "Trinity Health New England" and "Trinity Health – New England."

## III. STANDARD OF REVIEW

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original; internal quotation marks omitted). "To obtain a preliminary injunction, the plaintiff[] bear[s] the burden of demonstrating (1) a substantial likelihood

of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003). "The first factor, the plaintiff's likelihood of success, is 'the touchstone of the preliminary injunction inquiry.'" *Bos. Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 11 (1st Cir. 2008) (quoting *Philip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 674 (1st Cir. 1998)). "This is especially so in a trademark infringement case, since 'the resolution of the other three factors will depend in large part on whether the movant is likely to succeed in establishing infringement.'" *Swarovski Aktiengesellschaft v. Bldg. No. 19, Inc.*, 704 F.3d 44, 48 (1st Cir. 2013) (quoting *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006)). Nevertheless, the plaintiff retains the burden of satisfying *each* factor. *See Mass. Coal. of Citizens with Disabilities v. Civil Def. Agency & Office of Emergency Preparedness of Com. of Mass.*, 649 F.2d 72, 74 (1st Cir. 1981).

## IV. DISCUSSION

A. <u>Likelihood of Success on the Merits</u>

"To establish infringement successfully, a trademark plaintiff must demonstrate that the defendant used an imitation of its protected mark in commerce in a way that is 'likely to cause confusion, or to cause mistake, or to deceive.'" *Bldg. No. 19*, 704 F.3d at 48 (quoting 15 U.S.C. § 1114(1)(a)). Thus, "[a] successful infringement action requires the plaintiff to prove both (1) that its mark merits protection and (2) that the allegedly infringing use of its mark is likely to result in consumer confusion." *Id.* at 49 n.1. The second prong requires "'more than the theoretical possibility of confusion.'" *Bos. Duck Tours*, 531 F.3d at 12 (quoting *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.*, 103 F.3d 196, 200 (1st Cir. 1996)). Rather, "the allegedly infringing conduct must create a likelihood of confounding an appreciable number of

reasonably prudent purchasers exercising ordinary care." *Id.* (quoting *Winship Green Nursing Ctr.*, 103 F.3d at 201). Eight factors guide the inquiry into likelihood of confusion:

> (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark.

*Borinquen Biscuit Corp.*, 443 F.3d at 120.

Assuming, for the moment, HNE has demonstrated its mark merits protection, it has not yet established Trinity's use is likely to result in consumer confusion. On balance, the two marks at issue are fairly similar. As HNE argues, Trinity has incorporated HNE's entire mark, with the addition of only one word. *See Polar Corp. v. PepsiCo, Inc.*, 789 F. Supp. 2d 219, 230 (D. Mass. 2011). On the other hand, that word—"Trinity"—is a rather strong housemark. *See Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482, 487 (1st Cir. 1981). Still, the court finds, based on the "sight, sound, and meaning" of the marks, *Bos. Duck Tours,* 531 F.3d at 24, and "the total effect of the designation," *Pignons*, 657 F.2d at 487 (quoting *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 444 (9th Cir. 1980)), that this factor favors HNE, in that the similarity of the marks could lead the public to believe Trinity has acquired HNE or the two entities are somehow affiliated.

Factors (2) through (5) also favor HNE. Granted, as Trinity argues, the parties do not offer the same exact services. HNE is an HMO, whereas Trinity provides health care directly to patients. Nevertheless, the parties do operate within the overall health care field, and in that sense provide related services. *See Polar Corp.*, 789 F. Supp. 2d at 232 ("Trademark protection may extend beyond the exact product to include related products or services."). Moreover, the parties are part of competing and overlapping health care systems within the same geographical market. HNE is owned by the Springfield-based hospital Baystate Health (which is within HNE's covered provider network), and Trinity's network of service providers includes Mercy Medical Center, a competing

Springfield-based hospital. At the same time, some service providers in Trinity's network are covered by HNE's provider network. The parties also advertise via similar outlets. Accordingly, as HNE argues, a patient receiving care from a provider using the TRINITY HEALTH NEW ENGLAND mark may believe that provider is affiliated with HNE and is, therefore, covered as an in-network provider by HNE, even though that is not always the case.

HNE has not, however, provided convincing evidence of actual confusion. "While proof of actual confusion is not essential to finding likelihood of confusion, . . . evidence of actual confusion is often considered the most persuasive evidence of likelihood of confusion because past confusion is frequently a strong indicator of future confusion." *Unleashed Doggie Day Care, LLC v. Petco Animal Supplies Stores, Inc.*, 2011 WL 6812642, at *12 (D. Mass. Dec. 28, 2011) (internal quotation marks and citation omitted). Here, HNE points to an affidavit from an HNE manager reporting four examples of alleged consumer confusion and a survey administered by Brian M. Sowers. As Trinity argues, the affidavit fails to identify the confused consumers (apart from stating one is the affiant's mother) and does not indicate the confusion was necessarily due to the marks. Moreover, none of the individuals are alleged to have acted on their mistaken beliefs, and it is not clear the confusion was anything but temporary. *See id.* ("UDDC must at least provide some evidence that the 'confusion presents a significant risk to the sales or goodwill of the trademark owner.'" (quoting *Beacon Mut. Ins. Co. v. Onebeacon Ins. Grp.*, 376 F.3d 8, 15 (1st Cir. 2004)); *see also Astra Pharm. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1207 (1st Cir. 1983) ("There is no evidence that any temporary confusion that may have occurred regarding the identity of the salesmen had any effect whatever on the ultimate decision of a purchaser whether to buy a particular product."). As for the survey, Trinity has submitted a Rebuttal Report of Kenneth Hollander, which identifies several alleged defects with Sowers' survey and findings. Most notably, Hollander asserts Sower's survey results actually show a "net confusion" level of only 1.7%, rather than the 14% level cited by Sowers. In light of the weak

and contested nature of HNE's evidence, and the lack of development of these issues at this stage of the proceedings, the court finds HNE has not sufficiently demonstrated actual confusion and, therefore, this factor favors Trinity.

Nor has HNE demonstrated Trinity acted in bad faith in using the mark. Although HNE has provided evidence that it notified Trinity of HNE's rights to the mark, Trinity's evidence shows that it has used somewhat similar geographic naming conventions elsewhere in the country in conjunction with the name "Trinity Health." Furthermore, contrary to HNE's assertions, the court does not consider failed settlement discussions to be evidence of bad faith; rather, it would appear to indicate the opposite, provided the parties acted with an honest intent. As HNE has not sufficiently developed these issues, this factor is, at best, neutral.

Finally, the strength of HNE's mark (or lack thereof) favors Trinity, at least at this stage. Although HNE asserts that the '061 mark has obtained "incontestable" status,[2] the majority view is that "incontestability alone does not establish that the trademark is strong and therefore likely to cause the consumer confusion necessary for a finding of trademark infringement."[3] *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 934 (4th Cir. 1994) (collecting cases); *see also Hero Nutritionals LLC v. Nutraceutical Corp.*, 2013 WL 4480674, at *4 (C.D. Cal. Aug. 16, 2013); 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32.155 (4th ed.). Accordingly, HNE's "contention [regarding incontestability] 'confuses the issue of a trademark's validity with the separate inquiry into a mark's strength for purposes of the likelihood of confusion determination.'"

---

[2] HNE has not, however, demonstrated incontestability by showing that it filed the required affidavit with the United States Patent and Trade Office ["USPTO"] "attesting that the following requirements have been met: (i) there has been no final decision adverse to its ownership or enforcement rights for the preceding five-year period; (ii) there is no pending case or proceeding regarding the owner's rights in the mark; and (iii) the owner is still using the mark." *Borinquen Biscuit Corp.*, 443 F.3d at 117 n.3 (citing 15 U.S.C. § 1065); *see also Solmetex, LLC v. Dentalez, Inc.*, 150 F. Supp. 3d 100, 111 (D. Mass. 2015) ("[O]n this record I cannot find that the marks have attained uncontestable status, because Plaintiff has not shown or alleged that it filed the requisite affidavits with the USPTO.").
[3] The First Circuit has not explicitly weighed in on this issue.

*CareFirst of Md., Inc. v. First Care, P.C.*, 434 F.3d 263, 269 n.3 (4th Cir. 2006) (quoting *Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 92 (4th Cir. 1997)).

"In the First Circuit . . . courts analyze the strength of the mark by focusing on its commercial strength instead of its theoretical classification." *Polar Corp.*, 789 F. Supp. 2d at 233. "'Commercial strength' denotes the mark's consumer recognition value in the market place." *Bos. Duck Tours,* 531 F.3d at 16 n.14. Factors relevant to commercial strength include "the length of time the mark has been used, the trademark holder's renown in the industry, the potency of the mark in the product field (as measured by the number of similar registered marks), and the trademark holder's efforts to promote and protect the mark." *Borinquen Biscuit Corp.*, 443 F.3d at 121. Here, HNE has presented evidence showing it has used its registered mark for over 30 years, but its evidence as to the other factors is severely lacking. HNE has not, for example, presented survey or other evidence tending to show the public associates HEALTH NEW ENGLAND with its particular brand, and not merely in the descriptive sense. *See Bos. Beer Co. v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d 175, 182 (1st Cir. 1993) ("Survey evidence has become a well-recognized means of establishing secondary meaning. . . . In fact, consumer surveys and testimony are the only direct evidence on this question." (internal citation omitted)); *see also Bos. Duck Tours,* 531 F.3d at 23 (citing 2 McCarthy, *supra* § 11:82 for the proposition that "[w]hen determining the commercial or marketplace strength of a mark, . . . courts look to the same kind of evidence of real world recognition of the mark as is used to decide the presence or absence of secondary meaning to determine whether a noninherently distinctive designation is or is not a valid mark."). Although HNE has provided estimated advertising figures, these figures represent the company's total advertising and, thus, are not limited to promoting this particular mark. Moreover, Trinity has provided evidence that various HMOs and health-care-related entities use the words "health" and

"New England" in their marks, thereby weakening HNE's mark. *See Polar Corp.*, 789 F. Supp. 2d at 234-35. On these limited facts, therefore, the court finds HNE's mark is not particularly strong.

In the end, while the court believes HNE may ultimately succeed on the merits, it cannot conclude HNE has carried its burden of showing a *substantial* likelihood of success, based on the limited development of facts.

B.  Irreparable Harm

The court also finds HNE has not demonstrated a significant risk of irreparable harm, "an essential perquisite for a grant of injunctive relief." *Ross-Simmon of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 13 (1st Cir. 2000). To demonstrate irreparable harm, HNE must show not only that legal remedies are inadequate, but also that an injunction is an *immediate* necessity. *McGuire v. Reilly*, 260 F.3d 36, 42 (1st Cir. 2001) ("A party who seeks a preliminary injunction must show . . . that she faces a significant potential for irreparable harm in the absence of *immediate* relief." (emphasis added)); *Rubacky v. Morgan Stanley Dean Witter Corp.*, 104 F. App'x 757, 758-59 (1st Cir. 2004) (unpublished) ("In the absence of a real threat of *immediate* and irreparable harm, the district court appropriately declined to issue the injunction." (emphasis added)). At most, HNE has raised the potential for eventual harm stemming from the public's continued exposure to Trinity's mark.

While HNE asserts irreparable harm should be presumed as a matter of law in a trademark infringement case if there is a likelihood of success on the merits, that presumption—which the First Circuit has questioned recently, *Bldg. No. 19, Inc.*, 704 F.3d at 54; *Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc.*, 645 F.3d 26, 32-34 (1st Cir. 2011)—is inapplicable for two reasons. First, HNE has not shown a substantial likelihood of success on the merits. In particular, it has not sufficiently demonstrated actual or likely consumer confusion, despite the fact that Trinity has been using the disputed mark for over ten months. *See Peoples Fed. Savs. Bank v. People's United Bank*, 750 F. Supp. 2d 217, 227 (D. Mass. 2010) ("[T]he fact that Peoples United has been using its name to

operate the former Butler branches for more than three months with scant evidence of consumer confusion . . . suggests that harm is neither imminent nor irreparable.").

Second, even if HNE had adequately demonstrated likelihood of success, the presumption still would not apply due to HNE's significant delay in filing this motion. The First Circuit has explained that "any presumption of irreparable harm that may arise upon a finding of likelihood of success on the merits of a trademark infringement claim 'is inoperative if the plaintiff has delayed either in bringing suit or in moving for preliminary injunctive relief,'" because "'the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.'" *Voice of the Arab World,* 645 F.3d at 35 (quoting *Tough Traveler Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)). Here, HNE knew about Trinity's use of the TRINITY HEALTH NEW ENGLAND mark at least as early as September of 2015, it commenced this action on November 23, 2015, waited approximately 2 ½ months before requesting and obtaining a waiver of service (thereby extending the date the answer was due until April 11, 2016), and did not file this motion until July of 2016. *See Tough Traveler Ltd.*, 60 F.3d at 698 (delay of nine months before commencing action, then another four months before moving for preliminary injunction, eliminated presumption of irreparable harm); *Media3 Techs., LLC v. Mail Abuse Prevention Sys., LLC*, 2001 WL 92389, at *9 (D. Mass. Jan. 2, 2001) (delay of six month after learning of threatened harm demonstrated a lack of irreparable harm).[4] HNE's actions, therefore, indicate there is not an immediate need for injunctive relief. *See Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 74 (1st Cir. 2004) ("Absent something that indicates a need for

---

[4] While the First Circuit has explained that the presumption of irreparable harm "may still operate where 'the delay was caused by the plaintiff's ignorance of the defendant's competing product or the plaintiff's making good faith efforts to investigate the alleged infringement,'" *Voice of the Arab World,* 645 F.3d at 35 (quoting *Tough Traveler Ltd.*, 60 F.3d at 698), those exceptions, contrary to HNE's assertions, do not apply here. Again, HNE knew of Trinity's allegedly infringing conduct at least by September of 2015, and although HNE may have made good faith efforts to settle the dispute and investigate which entities were appropriate defendants, it does not attribute its delay to an investigation of the infringement itself.

...

*immediate* relief, a plaintiff's request for a preliminary injunction ordinarily ought to be rejected." (emphasis in original)).[5]

## IV. CONCLUSION

For these reasons, the court DENIES HNE's motion for preliminary injunction. (Dkt. No. 38).

It is So Ordered.

    /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge

---

[5] Because the court finds HNE has not carried its burden as to likelihood of success on the merits and irreparable harm, it will not address the remaining preliminary injunction factors (balance of hardships and public interest).